**Adolphus KEATON, Plaintiff-Appellee,**

v.

**The ATCHISON, TOPEKA AND SANTA FE RAILROAD COMPANY, a Corporation, Defendant-Appellant.**

**No. 13865.**

United States Court of Appeals
Seventh Circuit.

July 18, 1963.

Rehearing Denied Sept. 4, 1963.

John J. Schmidt, Floyd Stuppi, William J. O'Brien, Jr., Chicago, Ill., for defendant-appellant.

Robert J. Cooney, Irving Stenn, Jr., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This suit is under the Federal Employers' Liability Act.[1] Verdict and judgment were for plaintiff. Defendant Santa Fe has appealed.

Plaintiff, a Santa Fe cook, broke his leg when he fell in the vestibule of a pullman car. He had left the diner kitchen of the Super Chief, walked through the pullman car and got off at its vestibule to get provisions at the commissary a short way from the cars. On his return he boarded the pullman car, slipped in the vestibule and was injured.

Santa Fe contends the District Court erred in denying its motion for directed verdict. It argues there was no competent evidence to prove that it negligently failed to provide plaintiff a safe place to work.

On this contention we must view the evidence, and all the inferences reasonably drawable therefrom, in the light most favorable to plaintiff and decide whether reasonable men may with fair judgments differ from one another. Threatt v. United States Steel Corp., 283 F.2d 411 (7th Cir. 1960). Also, conflicts in the testimony must be resolved in plaintiff's favor. Ziegler v. Equitable Life Assur. Soc'y., 284 F.2d 661 (7th Cir. 1960), 5 Moore Federal Practice 2315–16 (2d ed. 1951). And if there is doubt, or the question is close, the case should go to the jury. Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943).

There was testimony that plaintiff walked up the steps to the car, stepped into the vestibule, his right foot slipped from under him and he fell; that he felt the steel vestibule floor and it was "very slippery," "slippery as ice," and felt "damp, wet" and "felt * * * and looked like * * * liquid soap;" that normally a passenger rug is placed on the vestibule floor but it was not in use when he slipped and fell; that about fifteen minutes before, and also right after this occurrence, the vestibule had an "accumulation of dirt, and silt, and moisture" and that it was later cleaned up; that about two hours before plaintiff fell, the cleaning women had scrubbed the vestibule with a pail of water and soap solution; and that the weather was "humid and warm that day."

1. 45 U.S.C.A. §§ 51–60.

■ We think that evidence is sufficient for plaintiff's prima facie case. The District Court did not err in denying the motion for directed verdict and in submitting the case to the jury.

■■ Santa Fe does not argue that the verdict is excessive. This fact, and the fact that there is evidence to support the verdict, weakens Santa Fe's several contentions with respect to prejudicial conduct and rulings at the trial. Christian v. Hertz Corp., 313 F.2d 174 (7th Cir. 1963). We have considered all other contentions but shall discuss only those we deem necessary. Also, because appellant does not argue the verdict was excessive, we shall not consider contentions which bear only on the amount of damages. Chicago R. I. & P. Ry. Co. v. Gunn, 112 Ark. 401, 166 S.W. 568 (1914).

■ Plaintiff alleged negligence of Santa Fe in failure to provide a safe place to work, *i. e.*, permitted the vestibule to become "grimy and slippery * * * by the presence of ice and other foreign substances * * *." Under Federal notice pleading,[2] this allegation was adequate to accommodate testimony, by witnesses for both sides, and argument to the jury that a vestibule rug normally in use for passengers was not on the floor when plaintiff slipped. The same is true of testimony of the vestibule being "wet from plain water." These were not new, surprising theories.

■ Santa Fe's steward testified that the vestibule had been dried up after plaintiff fell; and we cannot say the court committed prejudicial error in permitting plaintiff to testify about having heard at the time of injury a statement, " * * * those lowdown rascals * * * they wiped the floor * * * and [the

soles of] his shoes." As to testimony of similar statements by other witnesses, what error there may have been was harmless. And what argument was made upon the testimony of the quoted statement does not seem to us to have been prejudicial in the vigorously tried case.

■ We have not been persuaded that in the trial of liability and damages together the claimed misconduct of plaintiff's attorney had "a prevailing influence upon the jury" to Santa Fe's detriment. 3 Am.Jur. 607. And we cannot hold that any claimed errors are "inconsistent with substantial justice." Rule 61, F.R. Civ.P.[3]

We have considered, but deem it unnecessary to discuss, all other contentions made by appellant. We find no reversible error.

For the reasons given, the judgment is affirmed.

SCHNACKENBERG, Circuit Judge (dissenting).

Because plaintiff in this case recovered a verdict of $37,500, upon evidence showing a very doubtful basis for liability against the employer, and because of improper and prejudicial argument to the jury by plaintiff's counsel, over objection, which was unfair to defendant, I respectfully dissent.

Plaintiff, a cook in the employ of defendant railway company, was in the yard in Chicago, on one of the sleeping cars being assembled for the Super Chief, scheduled to leave Chicago at 6:30 P.M., August 15, 1959. The evidence shows, without contradiction, that it was customary for defendant to "bring out a red carpet" for the passengers just prior to loading at the Chicago depot. This carpet was placed on each of the vestibule

---

2. As Mr. Justice Black stated in Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), " * * * all the Rules require is 'a short and plain statement of the claim' [citing Rule 8(a)(2)] that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." See also 2 Moore, Federal Practice 1695–97 (2d ed. 1962).

3. This rule technically is a "mandate" to District Courts, but Courts of Appeals "gladly" follow the rule as the best practice. 7 Moore, Federal Practice 1030 (2d ed. 1955).

floors of the cars. Plaintiff came on duty before these carpets were laid on the day in question. He testified that he slipped on the floor of the vestibule of the sleeping car Regal Crest and sustained an injury to his right leg, for which he brought suit.

Then his attorney was permitted to argue to the jury that plaintiff was "a working fellow" and "Maybe you just want to save the carpeting for the cash-paying, luxury-treated customers that get on and pay an extra fare, whatever it is, so that they can walk on the carpeting".

His alleged poverty was again emphasized before the jury through examination by his lawyer who elicited information that plaintiff had spent "all the little money that I had", "some of it was railroad fare for my wife whose mother was ill", followed quickly by a question which elicited this answer: "Well, my pass rights were taken away from me." Although an objection to this last reference to the pass was sustained by the court, its effect on the jury was probably not erased thereby.

During the argument to the jury, plaintiff's counsel said: "He [the plaintiff] knows that he has a family to support and he starts thinking, especially after the first trip out."

An objection to the comment, brought this response from plaintiff's attorney: "I am sorry, his wife. He has got an eighteen-year-old son." However, in a pretrial deposition, plaintiff indicated that he had an illegitimate 18-year old daughter, who did not live with him.

Whether he had a family is immaterial in the case at bar. Its sole effect was to arouse sympathy for plaintiff and prejudice defendant, to the end that the jury might be influenced to find in favor of plaintiff, and to increase his award of damages.

While the record is replete with other instances of prejudice of this kind, the foregoing illustrations will suffice.

I would reverse and remand for a new trial.